## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITE HERE LOCAL 25,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  11-62 (JDB)** |
| **MADISON OWNERSHIP, LLC, ET AL.** | |
| **Defendants.** | |

### MEMORANDUM OPINION

Plaintiff Unite Here Local 25 ("Union or Local 25") brings this action against Madison Ownership LLC ("Ownership"), Madison Operating LLC ("Operating"), and Loews Madison Corp. ("Loews") (collectively "defendants"), seeking an injunction under a collective bargaining agreement ("CBA") compelling defendants to arbitrate a grievance related to the sale of the Madison Hotel.  Specifically, the Union maintains that defendants breached provisions of the CBA, particularly its successorship clause, when they sold the Madison Hotel without requiring the purchaser to be bound by the CBA's terms and conditions.  Currently before the Court are motions to dismiss by each defendant.  For the reasons explained below, the Court will deny the motions.

### BACKGROUND

The Madison Hotel is a 300-room property located at 1177 Fifteenth Street, N.W. in the District of Columbia.  Am. Compl. ¶ 7.  Local 25 represents approximately 8,000 hotel and food service workers in the Washington, D.C. area and has represented employees at the Madison Hotel since 1962.  Id. ¶ 3.  The Union and the Madison Hotel entered into a CBA, with a stated

term of September 16, 2007 to September 15, 2010.  Id. ¶ 9; CBA, art. 20.1.[1]  The CBA sets

forth the parties' mutual understanding regarding the usual aspects of the employment

relationship, including working conditions, wages, benefits, and promotions.  The CBA also

contained a provision commonly known as a "successorship clause."  Article 1.12, titled "Leases

and Sales,"  stated in relevant part:

> In the event the Employer sells or by other contractual
> arrangement transfers all or part of his business to another party,
> the Employer shall require, as a condition of such transaction, that
> the other party be bound by the terms and provisions of this
> Agreement, or offer satisfactory proof . . . that he has made an
> arrangement with the Union satisfactory to the Union.

CBA, art. 1.12(a).  The CBA also contained a provision which established a grievance and

arbitration procedure for resolving disputes:

> **17.1   Grievance Procedure:** In the event a grievance or misunderstanding
> arises out of and during the term of this Agreement, such disputes shall be
> processed as described below. It is agreed that any differences arising
> incident to negotiation of terms of a new Agreement are not subject to this
> section, the sole purpose of which is to make subject to arbitration
> grievances arising out of and during the term of this Agreement.

CBA, art. 17.1 ("arbitration clause").

It is hotly disputed which parties are bound by the CBA, as well as the period of time in

which the CBA was in existence.  Local 25 claims that Operating, Ownership, and Loews are all

parties bound by the CBA.  According to Local 25, Operating was the "leasehold owner" and

Ownership was the "fee owner" of the hotel.  Local 25 further claims that Loews, the manager of

the hotel, was an "employer" as defined under 29 U.S.C. § 152(2).  See Am. Compl.  ¶¶ 4-6.

Operating and Loews dispute Local 25's assertions.  Ownership does not appear to contest that it

---

[1]  The CBA, which was attached to previous submissions to this Court, is incorporated and
referred to in the amended complaint.

was a party to the CBA.

The CBA itself states that it was entered into between the Union and "Madison LLC owners and Loews Hotels operators of The Madison, a Loews Hotel hereinafter referred to as the ('Employer')."  See CBA, Ex. 1 to Boardman Declaration.  While "Madison LLC" was originally named by Local 25 as a defendant in this suit, no party now claims that an entity named "Madison LLC"  exists or ever existed.  The amended complaint filed on March 22, 2011 contains no  reference to "Madison LLC".  The CBA contained two signature lines.  John Boardman, the Executive Secretary-Treasurer of Local 25, signed the Agreement on behalf of the Union.  Under the signature line for "Loews Hotels t/a The Madison, a Loews Hotel," the CBA was signed by "Larry Biederman, GM, The Madison, a Loews Hotel."  There are no signature lines or references to Madison Ownership LLC or Madison Operating LLC.  See id. at 35.

The parties' views also differ regarding how many times the CBA was extended.  Local 25 and the defendants agree that the CBA's expiration date was extended to October  8, 2010. However, the Union claims that the CBA was further extended to March 15, 2011.  Am. Compl. ¶¶ 9-10.[2]  The defendants disagree.

In October 2010, the Union learned that the Madison Hotel was on the market for sale. Am. Compl. ¶ 11.  In the weeks that followed, the Union was in communication with various representatives of the Hotel regarding drafts of the purchase and sale agreement ("PSA"). During those discussions, the Union had expressed concerns that the proposed language of the

---

[2] The Union alleges that subsequent to these agreed-upon extensions, the relationship between the Union and the defendants proceeded as before, and points to the Hotel's agreement to pay additional health care costs effective November 1, 2010, and its continued payment of healthcare costs thereafter. Am. Compl. ¶¶ 9-10.

PSA failed to comply with the CBA's successorship clause.  Id. ¶¶ 11, 13-14.  Local 25 alleges

that John Parker, the hotel owner's representative, assured the Union that the owner understood

that language in the PSA "was not acceptable and had to be fixed."  Id. ¶ 14.  The Union claims

that Parker promised that the purchase price would be reduced in exchange for the purchaser's

assumption of the CBA.  Id. ¶ 13-14.  Boardman again inquired about the PSA's status around

December 22, 2010 and discovered that the PSA had been executed and that closing of the sale

would occur on  January 19, 2011.  Id. ¶ 15.  Local 25 claims that the problematic language of

the executed PSA remained unchanged.

   After the purchaser failed to respond to requests to modify the executed PSA, the Union

filed a grievance on January 4, 2011 alleging violation of the CBA's successorship provision. Id.

¶¶ 18, 20.  The Union served the grievance on the hotel's general manager, the hotel's spokesman

Peter Chatilovicz, and Stephen Lueke, labor counsel for the hotel.  Id. ¶¶ 9, 13, 22.  According to

Local 25, Chatilovicz, acting on behalf of Loews, and Lueke, acting on behalf of the owner, gave

notice that they were refusing arbitration. Id. ¶ 23.

   On January 11, 2011, the Union initiated this action against Madison LLC and Loews.

The Union sought a temporary restraining order ("TRO") to compel arbitration of the January 4,

2011 grievance and to enjoin the January 19, 2011 sale of the hotel pending the conclusion of the

arbitration proceedings.  Compl. at 9.  The Court held a two-day evidentiary hearing on January

13 and 14, 2011.  See  Tr. of TRO Hr'g, 1-181 ("Tr. Day One"), ECF No. 13; Tr. of  TRO Hr'g,

182-465 ("Tr. Day Two"), ECF No. 14.  After considering all the evidence, including both

testimonial and documentary evidence, the Court denied the TRO. It concluded that the Union

had failed to show a likelihood of success on the merits, specifically that the CBA was extended

and in effect during the relevant time, such that arbitration could be compelled or the sale of the hotel enjoined.  See Tr. Day Two 453-460; Order, ECF No. 18 (Jan. 18, 2011).

Jamestown Properties ("Jamestown") purchased the Hotel as planned on January 19, 2011.  Ownership's Mot. at 2.  On March 22, 2011, the Union filed its amended complaint, now naming as co-defendants Madison Ownership LLC, Madison Operating LLC, and Loews Madison Hotel Corp.  See generally Am. Compl., ECF No. 21.  Although Local 25 no longer seeks to enjoin the sale of the hotel, it continues to seek an injunction compelling defendants to arbitration.  Am. Compl. ¶¶ 24-25.  All three defendants have moved to dismiss Local 25's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1), on the ground that Local 25's claims are now mooted by the hotel's sale.[3]

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cnty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at  236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir.

---

[3]  Operating also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the Court will separately address.

2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction.  See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

## DISCUSSION

### I.   Mootness

Loews, Ownership, and Operating argue that the sale of the Madison Hotel has mooted Local 25's claims, because there is no longer a "live" controversy and the Union now lacks any available remedy given that sale.  The Court disagrees.

Article III of the Constitution limits the jurisdiction of the federal courts to the

consideration of cases or controversies.  U.S. Const. art. III, § 2.  Mootness is a justiciability

doctrine derived from this limitation. See, e.g., Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th

Cir. 2001); see also U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 395-96 (1980).  Federal

courts have authority only to "adjudicate actual, ongoing controversies."  Honig v. Doe, 484 U.S.

305, 317 (1988).  "[A] case is moot when the issues presented are no longer 'live' or the parties

lack a legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496

(1969); accord Ass'n of Flight Attendants v. Delta Air Lines, Inc., 879 F.2d 906, 909 (D.C. Cir.

1989).  However, "as long as some issues remain alive, 'the remaining live issues supply the

constitutional requirement of a case or controversy.'" Delta Air Lines, Inc., 879 F.2d at 909

(quoting Powell, 395 U.S. at 496-97).  The mootness doctrine "is not a legal concept with a fixed

content or susceptible of scientific verification."  Geraghty, 445 U.S. at 400-01 (citing Poe v.

Ullman, 367 U.S. 497, 508-09 (1961)).  Instead, the Supreme Court has described the mootness

doctrine as having a "flexible character."  Id.

Defendants have filed separate motions to dismiss, but each motion challenges the

amended complaint on the basis of mootness.  While each defendant argues variations of why

Local 25's case is moot, all contend that because of the hotel's sale, the alleged violations of the

CBA will not recur, and no remedy would be available to the Union in arbitration.  Specifically,

Operating argues that it no longer holds a leasehold interest in the Madison Hotel after the sale

and that the Union is foreclosed from seeking monetary damages due to an alleged breach of the

successorship clause, because its January 4, 2011 grievance only sought an injunction against the

sale.  Operating's Mot. to Dismiss at 13-14.  For its part, Ownership argues that, even assuming

that the Union incurred damages because of an alleged breach by defendants, those damages did

not "arise under" the CBA, but were instead caused by Jamestown.  Ownership's Mot. to Dismiss at 6-8.  Loews makes what can be characterized as a futility argument -- because Loews never owned the Madison Hotel, nor had any influence over the terms and conditions of the hotel's sale, an arbitrator could not possibly find that Loews had breached the successorship clause.  Loews' Mot. to Dismiss at 4-9.

A significant problem with defendants' mootness arguments is that the Union's amended complaint does not seek to rescind or enjoin the sale of the Hotel.  Instead, Local 25 seeks an order to compel defendants to arbitrate its previously-submitted grievance.  See generally Am. Compl.; Pl.'s Opp'n to Ownership's Mot. at 2.  As this Court expressed at the TRO hearing, if the Court were to find that there was an extension of the CBA until March 2011, then the Court would also necessarily find that any dispute over the successorship clause must go to arbitration.  This result would essentially grant the Union the relief it requests -- an opportunity to have its grievance heard by an arbitrator.  TRO Hr'g at 4:23-25.  That the arbitrator, not this Court, should decide the actual merits of any claimed breach to the successorship clause is not in serious dispute.  See Tr. Day One 6:16-7:15; 12:13-18-14:9 (parties agreeing that if there is no CBA, then the Court has no jurisdiction to provide relief, and agreeing that any challenge on the merits to a claimed breach of the successorship clause would be heard by an arbitrator).  Moreover, any further question as to what remedies the Union might be entitled to because of a breach of the CBA is an issue for the arbitrator to resolve, not the Court.[4]  The same analysis

---

[4]  All three cases that Ownership relies upon involve challenges to judicial enforcement of awards already imposed by an arbitrator -- not decisions over whether a dispute should be submitted to arbitration in the first instance.  See Kraft Foods, Inc. v. Office & Prof'l Emp. Int'l Union, 203 F.3d 98, 103 (1st Cir. 2000) (upholding arbitration remedy when it "dr[ew] its essence" from the CBA); S.D. Warren Co. v. United Paperworkers' Int'l Union, 845 F.2d 3, 7-8 (1st Cir. 1988) (declining to enforce arbitration award when arbitrator ignored "plain language of

applies to Loews' and Ownership's arguments, which in essence claim that because the Union's

submitted grievance only sought one kind of remedy, it would be foreclosed from seeking other

kinds of remedies.  These arguments essentially conflate mootness with futility.  The Court need

not (and should not) decide what kinds of remedies, if any, an arbitrator could provide for breach

of the successorship clause, or any other breach arising under the CBA.[3]  It only needs to decide

whether arbitration should be compelled under the CBA, and with respect to which defendants.

And to decide that, the Court must resolve whether the CBA was extended to March 2011 and

who are "parties" to the CBA.

The parties place too much reliance on their generalized assertion that one-time

violations, as opposed to recurring violations of the CBA, could moot this action involving an

injunction to compel arbitration.  The inquiry as to whether arbitration should be compelled is

not based on the nature, magnitude, or frequency of the breach, but whether the parties had

intended for that breach to be covered by the arbitration clause.  At all times, the relevant focus

is on what the parties had agreed upon.  See RDP Technologies, Inc. v. Cambi AS, 800 F. Supp.

2d 127, 139-40 (D.D.C. 2011) (describing the "established proposition" that 'arbitration is a

matter of contract and a party cannot be required to submit to arbitrate any dispute which he has

---

the contract"); Leed Architectural Prods, Inc. v. United Steelworkers of Am., Local 6674, 916
F.2d 63, 66-67 (2d Cir. 1990) (instructing district court to vacate arbitration award when
arbitrator violated well-established rule that arbitrators cannot derive authority from sources
outside the CBA).

[3] Courts also recognize that there is a need for arbitrators to rely on their own judgment "when it
comes to formulating remedies" because of the need "for flexibility in meeting a wide variety of
situations."  United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597
(1960); accord Hall v. Treasure Bay Virgin Islands Corp., 371 F. App'x. 311, 313 (3d Cir. 2010);
Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, 418 F.3d 762, 769 n.5 (7th
Cir. 2005); Chrysler Motors Corp. v. Int'l Union, 959 F.2d 685, 688 (7th Cir. 1992).

not agreed so to submit'") (quoting <u>AT & T Techs Inc. v. Commc'n Workers of Am.</u>, 475 U.S. 648, 648 (1986)).

Loews, in particular, greatly overstates the applicability of the Court's prior findings in denying a TRO on the ultimate question whether a CBA (and hence, an arbitration clause) was in existence at the time of the January 4, 2011 grievance.  Loews focuses on the Court's prior "ruling" that the CBA had expired in October 2010, and claims that the "Court effectively addressed -- and denied -- the Union's requested relief." <u>See</u> Loews' Mot. to Dismiss at 4, 6.  But Loews' characterization of this Court's decision denying the TRO does not square with the TRO standard that the Court actually applied.  Indeed, the Court repeatedly emphasized both at the hearing and in its Order that its findings were limited to considering the merits of the requested TRO.  <u>See, e.g.</u>, Tr. Day One 6:4-8 ("[W]e're here on a TRO . . . "[the Court is] going to resolve [whether there is a collective bargaining agreement] in this context of a TRO hearing.");  Tr. Day Two 458:3-6 ("For the purposes of the injunctive relief that is sought . . . plaintiff has not carried that burden to establish that there was an extension."); <u>id.</u> at 14-19 ("I cannot grant the requested TRO relief because I cannot conclude that plaintiff has succeeded or is likely to succeed on the merits of [its] claim.  It is only a likelihood of success standard in a [TRO] or preliminary injunction context, when we're speaking of the merits."); <u>see also</u> Order Denying Pl.'s Mot. for a TRO, ECF No. 7 (Jan. 18, 2011) ("[P]laintiff has not shown a likelihood of success on the merits of its claim that the CBA was extended through March 15, 2011.").  The Court did not resolve on the merits either whether the CBA was extended until March 2011 or who was a party to the CBA.

Accordingly, notwithstanding the hotel's sale, the question whether the Court is able to

grant the Union's requested relief -- an order directing the parties to arbitrate the grievance -- remains a "live" issue that the Court must resolve.  No defendant has persuasively argued that it would be appropriate for the Court to consider what would occur *during* arbitration in deciding whether the Union's grievance should be heard in that forum.  Because a live issue remains with respect to the extension of the CBA (and the arbitration clause), and the Union clearly continues to have a "legally cognizable interest in the outcome" of the case,  Powell, 395 U.S. at 496, Local 25's claim is not moot.

## II.   Subject Matter Jursidiction under Labor Management Relations Act

As previously expressed, this case presents two options for the Court.  If the CBA had expired in October 2010, then pursuant to section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a), the case must be dismissed because the Court would lack subject matter jurisdiction over Local 25's request to arbitrate a grievance under that CBA. Hence, without a CBA, there would be nothing for the Court to compel.  On the other hand, if the Court determines that a CBA was in effect during the relevant time period, then any claims regarding breach of the successorship clause  -- or any other breach arising under the CBA -- would be decided by an arbitrator.  See Tr. Day One 4:21-5:10.  No defendant has discussed in great length the Court's subject matter jurisdiction over this action as impacted by the CBA's expiration.  However, the Court bears an affirmative obligation to ensure that it acts within its jurisdictional authority.  See, e.g., Gen. Motors Corp. v. EPA., 363 F.3d 442, 448 (D.C. Cir. 2004); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

Section 301 of the LMRA confers jurisdiction on federal courts over "[s]uits for violation

of contracts between an employer and a labor organization." <u>See</u> 29 U.S.C. § 185(a); Am.

Compl. ¶ 2; <u>see also</u> <u>Lopez v. Commonwealth Oil Ref. Co.</u>, 833 F. Supp. 86, 88 (D.P.R. 1993),

<u>aff'd</u>, 29 F.3d 619 (1st Cir. 1994) (quoting <u>United Paperworkers Int'l Union v. Int'l Paper Co.</u>,

920 F.2d 852, 859 (11th Cir. 1991)).  Accordingly, the central issue in this case is whether a

CBA existed during the January 2011 timeframe, such that the Court could compel the parties to

comply with the arbitration clause of the CBA with respect to Local 25's grievance. <u>See</u> <u>Lopez</u>,

833 F. Supp. at 88;  <u>Williams v. WCI Steel Co.</u>, 170 F.3d 598, 605 (6th Cir. 1999) (citing <u>Litton</u>

<u>Fin. Printing Div. v. NLRB</u>, 501 U.S. 190, 206 (1991)); <u>Asbury v. Container Prods, Inc.</u>, Civ. A.

No. 90-1035, 1991 WL 229953 (E.D. La. Oct. 25, 1991), <u>aff'd sub nom.</u> <u>Asbury v. Container</u>

<u>Prods</u>, 968 F.2d 17 (5th Cir. 1992) (dismissing breach of contract claim under 301(a) for lack of

jurisdiction when CBA had expired by the relevant time).

   The Court bears the responsibility of determining in the first instance whether a CBA was

in existence at the time of the parties' dispute.  It is "well settled that where the dispute at issue

concerns contract formation, the dispute is generally for courts to decide." <u>Granite Rock Co. v.</u>

<u>Int'l Brotherhood of Teamsters,</u> 130 S. Ct. 2847, 2855-56 (2010); <u>accord</u> <u>Nat'l R.R. Passenger</u>

<u>Corp. v. Boston & Me. Corp.</u>, 850 F.2d 756, 761 (D.C. Cir. 1988) ("[I]ssues of formation . . .

must always be decided by the courts . . . .").  In <u>RDP Technologies, Inc. v. Cambi AS</u>, this

Court noted that while the D.C. Circuit has not considered the propriety of district courts

adjudicating challenges to the formation of a contract containing an arbitration clause, the D.C.

Circuit has cited to cases from other circuits taking that approach. 800 F. Supp. 2d at 139 (citing

<u>Nat'l R.R. Passenger Corp.</u>, 850 F. 2d at 761).  Moreover, the Supreme Court in <u>Granite Rock</u>

instructs that, "[t]o satisfy itself that [an] agreement exists, the court must resolve any issue that

calls into question the formation or applicability of the specific arbitration clause that a party

seeks to have the court enforce." 130 S. Ct. at 2856.  Hence, "courts should order arbitration of a

dispute <u>only</u> where the court is satisfied that the formation of the parties' arbitration agreement

. . . is [not] in issue." <u>Id.</u> at 2857 (emphasis added).

In order for a dispute to "arise under" a CBA that triggers the parties' agreement to

resolve that dispute by arbitration, there must be a CBA to consider as a starting point for the

Court's analysis.  If no CBA was in place at the time of the alleged breach and the Union's

submitted grievance, then it likely follows (at least based on the facts of this case) that the

arbitration clause within the CBA had also expired.[4]  Hence, the Court would lack any authority

to direct the parties to arbitration.

This analysis is consistent with the Court's observation at the TRO hearing , that its

jurisdiction to decide this case depends "on there being a violation of a contract between an

_____

[4] Whether an arbitration clause within an expired CBA extends beyond that CBA depends on several considerations.  Significantly, courts look to the intent of the parties, as manifested by the language of the arbitration agreement. <u>See, e.g.</u>, <u>AT & T Techs Inc.</u>, 475 U.S. at 648; <u>RDP Technologies, Inc.</u>, 800 F. Supp. 2d at 139-40.  Courts have not hesitated in enforcing broad arbitration agreements over rights that "arise under" a CBA, even if the CBA thereafter expires or terminates. <u>See, e.g.</u>, <u>Nolde Brothers Inc. v. Bakery Workers</u>, 430 U.S. 243, 255 (1977); <u>Litton</u>, 501 U.S. 190, 209 (1991) (post-expiration grievances are not arbitrable unless they "arise under" the contract and describing circumstances where post-expiration grievances satisfy that standard); <u>Washington Mailers Union Local M-29 v. Washington Post</u>, 699 F. Supp. 2d 130, 133 (D.D.C. 2010) (finding that parties intended for post-expiration arbitrability of contractual lifetime employment guarantee, a right that had vested under the CBA prior to its expiration).  Here, assuming that a CBA existed at the time of the grievance, the parties do not seriously dispute that a grievance based on a breach of the successorship clause falls under the CBA, even though Ownership briefly argues that any "damages" as a result of a breach were caused by Jamestown. <u>See</u> Ownership's Mot. to Dismiss at 7.  The arbitration clause itself, as set forth in the CBA, states that it extends to "grievances arising out of *and during* the term of this Agreement." <u>See</u> CBA, art. 17.1 (emphasis added).  Hence, if the CBA was extended until March 2011, the alleged breach would have occurred while the CBA was in force, and may be arbitrable.

employer and a labor organization."  See Tr. Day One 4:10-11.  The Court also noted that the relevant threshold question is whether the CBA was in effect during the operative time period, Tr. Day One 4:12-20, and that a factual finding that there was no CBA in effect at the time of the alleged breach of the CBA would be "the end of things for [the Court]" because such a finding would be tantamount to a determination that "there's no jurisdiction."  See id. at 5:4-10.

The parties have clearly disputed whether the CBA was extended through March 15, 2011, such that Local 25's January 4, 2011 grievance could be covered by the CBA's arbitration clause.  Although the Court concluded at the TRO hearing that the Union "has not carried [the] burden to establish that there was an extension [of the CBA]," Tr. Day Two 458:4-6, it also noted that it was conceivable that the Union might be able to demonstrate an extension of the CBA with "some more time and depositions and further development of evidence," id., 458:7-9.

In addition, even assuming that a CBA was in effect in January 2011, the parties have disagreed over who is bound by the agreement.  As this Court previously observed, it is somewhat bewildering at this juncture how the identities of the parties bound by the agreement could still remain unclear.  Notwithstanding the claimed extensions, the CBA had already been in place for a number of years.  But in any event, the issue of which parties were bound by the CBA remains a significant factual dispute.  Operating claims that it was not a party to the CBA and never has been, and that Larry Biederman did not act as Operating's agent when he signed the CBA.  Operating's Mot. at 8-10.  Local 25 argues otherwise.  Determining which parties are bound by the CBA is a significant inquiry, for the Court would lack jurisdiction over any defendant who was not a party to -- and hence, not bound by -- the CBA.  See, e.g., Sheetmetal Workers Union Local v. Pub. Serv. Co. of Ind., Inc., 771 F.2d 1071, 1073-74 (7th Cir. 1985)

(dismissing complaint for lack of jurisdiction when the labor agreement did not bind the

defendant); Dist. 2 Marine Eng'rs Beneficial Ass'n-Assoc. Mar. Officers v. Grand Bassa Tankers,

Inc., 663 F.2d 392, 401 (2d Cir. 1981) (finding no jurisdiction under 301(a) when the defendant

was not the employer of the union workers).

These factually complicated questions -- when the CBA expired and which parties are

bound by it -- are not easily resolved.  Tr. Day Two 454-55.  At this juncture, based on the

record and the arguments before it, the Court remains unable to determine whether (and as to

which parties) the Court should direct arbitration.   Accordingly, it is the better course to allow

the parties an opportunity to engage in discovery, which may ultimately lead this Court to

conclude that it lacks subject matter jurisdiction.

Finally, the Court is mindful that subject matter jurisdiction is ordinarily analyzed under

the standards governing a motion to dismiss pursuant to Fed. R.  Civ. P. 12(b)(1), and that the

inquiry is usually a threshold question determined at the outset of the case.  Here, however, the

inquiry into whether the Court has jurisdiction to compel arbitration under the CBA depends on

whether there was a CBA in effect at all when the alleged breach occurred and Local 25's

grievance was submitted in January 2011   Accordingly, where the jurisdictional question is

closely intertwined with the merits of the case, the D.C. Circuit has instructed that it is

appropriate for a court to allow discovery to proceed, and to consider the issue of subject matter

jurisdiction on a motion for summary judgment thereafter.  See, e.g., Herbert v. Nat'l Acad. of

Scis., 974 F.2d 192, 198 (D.C. Cir. 1992) ("[T]hough the trial court may rule on disputed

jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it

should usually defer its jurisdictional decision until the merits are heard.") (citing Land v. Dollar,

330 U.S. 731, 731 (1947)); <u>Loughlin v. U.S.</u>, 230 F. Supp. 2d 26, 36-37 (D.D.C. 2002) ("When the jurisdictional issues are inextricably intertwined with the merits of the cause of action, courts have not dismissed federal claims on Rule 12(b)(1) motions unless they are clearly insubstantial or immaterial. Instead, they are treated as motions for summary judgment."). Dismissal of the case on the basis of Fed. R. Civ. P. 12(b)(1) "may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." <u>Herbert</u>, 974 F.2d at 198 (citing <u>Collins v. New York Cent. Sys.</u>, 327 F.2d 880 (D.C. Cir. 1963)).[5]

## CONCLUSION

For the foregoing reasons, the Court will deny defendants' motions to dismiss. A separate Order accompanies this Memorandum Opinion.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>March 23, 2012</u>

---

[5] For similar reasons, the Court will deny Operating's motion to dismiss based on Fed. R. Civ. P. 12(b)(6). Operating claims that the Union has failed to allege sufficient facts that Operating was a party to the CBA, that it agreed to an extension, or that it failed to arbitrate the grievance. <u>See generally</u> Operating's Mot. to Dismiss. However, the Union alleged that Operating was the "leasehold owner" of the Hotel and a party to the CBA at all relevant times, that defendants extended the CBA and continued their relationship with Local 25 "as before" and that the Hotel "owner" notified the Union that it refused to arbitrate the grievance. Am. Compl. ¶¶ 4, 9-10 & 23. These allegations are sufficient to survive a 12(b)(6) motion to dismiss. <u>See Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>Atherton v. District of Columbia Office of the Mayor</u>, 567 F.3d 672, 681 (D.C. Cir. 2009). The fact-intensive issues as to whether Operating was a party to the CBA and whether it -- or any defendant -- agreed to extend the CBA through March 15, 2011 remain in dispute.